**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Jack Leroy UNDERWOOD,
Defendant-Appellee.**

**No. 81–1451.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 15, 1983.

Decided Sept. 30, 1983.

Certiorari Denied Feb. 21, 1984.
See 104 S.Ct. 1309.

Brian C. Leighton, Asst. U.S. Atty., Fresno, Cal., for plaintiff-appellant.

Edward P. Moffat, Asst. Federal Defender, Fresno, Cal., for defendant-appellee.

Before BROWNING, Chief Judge, GOODWIN, WALLACE, ANDERSON, HUG, TANG, SKOPIL, FLETCHER, FARRIS, PREGERSON, and CANBY, Circuit Judges.

BROWNING, Chief Judge.

A federal arrest warrant was issued for Underwood, an escaped federal prisoner. Acting on the basis of this warrant, state officers entered a house in which Underwood was staying, arrested him, and seized weapons in plain view. The district court granted defendant's motion to suppress the weapons on the ground that entry without a search warrant identifying the house in which Underwood was found violated the fourth amendment. We hold that reversal is required by *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), rejecting the contention that the rule stated in *Payton* is dictum we need not follow.

## I.

Underwood escaped from a federal correctional institution in Kentucky. A United States magistrate issued a warrant for his arrest. Because Underwood had resided in Delano, California, federal authorities informed the Delano police of his escape. A reliable informant told Delano police that Underwood could be found at a house police believed to be the residence of a man named Johnny Duckett. The informant said Duckett told him that Duckett and Underwood "got cranked up" the night before and Underwood was "crashed" at the Duckett residence. Acting under the authority of the federal arrest warrant, but without obtaining a search warrant, the police surrounded the house, announced their presence, and hearing no response, made a nonconsensual entry through a slightly open door. The officers found Underwood in the house, armed with a hand gun. While handcuffing Underwood, one of the officers noticed, in plain view, a partially opened black coffin-shaped box containing a shotgun and ammunition.

Underwood was indicted for possession of an unregistered firearm and possession of a firearm by a felon. He moved to suppress the weapons. The district court held that the arrest warrant was valid and the officers had probable cause to believe Underwood was in the house when they entered. Nevertheless, the court granted the motion to suppress on the ground that "the entry [of the house] not being authorized by a search warrant, was constitutionally impermissible." The government contends the rule announced in *Payton* requires reversal.[1] We agree.

In *Payton,* the Supreme Court explicitly rejected the argument that a separate search warrant based on probable cause to believe a suspect was in a particular dwelling was necessary to protect the interests of the person named in an arrest warrant. "Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." 445 U.S. at 603, 100 S.Ct. at 1388.

## II.

There are only two possible grounds for avoiding the application of the rule announced in *Payton* to this case.

The first is that the person named in the arrest warrant in *Payton* was in his

---

1. The parties agree that the standard for suppression of evidence in the circumstances of this case is the same under the United States and California Constitutions. We therefore do not reach the issue whether evidence obtained by a state officer in violation of state law is admissible in a federal trial. *See United States v. Daniel,* 667 F.2d 783, 785 (9th Cir.1982); *United States v. Wheeler,* 641 F.2d 1321, 1322 n. 1 (9th Cir.1981).

own home, while in this case the person named in the arrest warrant, Underwood, was in the home of a third person. For the purpose of determining whether Underwood's rights were violated, nothing turns on this difference. A person has no greater right of privacy in another's home than in his own. If an arrest warrant and reason to believe the person named in the warrant is present are sufficient to protect that person's fourth amendment privacy rights in his own home, they necessarily suffice to protect his privacy rights in the home of another. *United States v. Clifford,* 664 F.2d 1090, 1093 (8th Cir.1981).

■ The right of a third party *not* named in the arrest warrant to the privacy of his home may not be invaded without a search warrant, *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). But this right is personal to the home owner and cannot be asserted vicariously by the person named in the arrest warrant. *See Steagald v. United States,* 451 U.S. at 218–19, 101 S.Ct. at 1650–51; *Rakas v. Illinois,* 439 U.S. 128, 133–34, 99 S.Ct. 421, 424–25, 58 L.Ed.2d 387 (1978). "[D]efendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated." *United States v. Salvucci,* 448 U.S. 83, 85, 100 S.Ct. 2547, 2549, 65 L.Ed.2d 619 (1980).

### III.

The second possible ground for avoiding the application to this case of the Supreme Court's positive statement in *Payton* that an arrest warrant plus reason to believe the suspect is present are sufficient to permit entry without a search warrant is that the statement was merely dictum that need not be followed by this court because the officers in *Payton* had neither a search warrant nor an arrest warrant. This restrictive interpretation of *Payton* has been rejected by every court of appeals[2] and every state court[3] that has considered the issue. We reject it as well.

The question before the Court in *Payton* was the constitutionality of New York statutes that authorized police to enter a private residence without a warrant to make a felony arrest. The State argued that only a search warrant based on probable cause to believe the suspect was in the home at the time could adequately protect the privacy interest at stake, and because it was manifestly impractical to obtain such a warrant, no warrant at all was constitutionally required. The Supreme Court rejected the State's argument on the ground that the impracticality of obtaining a search warrant did not require a holding that *no* warrant was required. While a search warrant would afford greater protection, the Court reasoned that an arrest warrant would afford sufficient protection to the person named in the warrant to satisfy the fourth amendment. 445 U.S. at 602–03, 100 S.Ct. at 1388. The Supreme Court held that arrests under the statute were invalid, not because *no* warrant was obtained, but "[b]ecause no *arrest* warrant was obtained ...." *Id.* at 603, 100 S.Ct. at 1388 (emphasis added). This is the holding of the case.

If there was any doubt as to this interpretation of *Payton,* it was laid to rest by *Steagald v. United States,* 451 U.S. at 214, n. 7, 101 S.Ct. at 1648, n. 7 and *Michigan v.*

**2.** The courts of appeals of the Second, Fourth, Sixth, and Eighth Circuits have recognized the *Payton* language to be binding. *See United States v. Spencer,* 684 F.2d 220, 222–23 (2d Cir.1982); *United States v. Clifford,* 664 F.2d 1090, 1092–93 (8th Cir.1981); *United States v. Jones,* 641 F.2d 425, 428 n. 3 (6th Cir.1981); *Wallace v. King,* 626 F.2d 1157, 1161 (4th Cir. 1980).

**3.** *See Taylor v. State,* 642 P.2d 1378, 1380 (Alaska App.1982); *People v. Hernandez,* 105 Ill.App.3d 501, 61 Ill.Dec. 379, 383 n. 1, 434

N.E.2d 532, 536 n. 1 (1982); *Patterson v. Commonwealth,* 630 S.W.2d 73, 74 (Ky.App.1981); *State v. Barrett,* 408 So.2d 903, 904–05 (La. 1981); *People v. Clement,* 107 Mich.App. 283, 309 N.W.2d 236, 238 (1981); *State v. Miller,* 316 N.W.2d 23, 24 (Minn.1982); *Commonwealth v. Stanley,* 498 Pa. 326, 446 A.2d 583, 586 (1982); *Pope v. State,* 635 S.W.2d 815, 817 (Tex.App.—Dallas 1982); *Hocker v. Woody,* 95 Wash.2d 822, 631 P.2d 372, 374–75 (1981) (en banc).

*Summers,* 452 U.S. 692, 704, 101 S.Ct. 2587, 2595, 69 L.Ed.2d 340 (1981). In both cases the Court treated this language in *Payton* as part of the *Payton* holding.

In *Steagald,* police officers with an arrest warrant entered a third party's home to effect the arrest of the person named in the arrest warrant. The suspect was not present, but the officers seized cocaine in plain view and used it to convict the homeowner. The Supreme Court held the homeowner was constitutionally entitled to the protection of a search warrant. 451 U.S. at 216, 101 S.Ct. at 1649. The Court reasserted the *Payton* rule that the fourth amendment rights of the person named in the arrest warrant were fully protected by an arrest warrant, and no search warrant was required: "In *Payton,* of course, we recognized that an arrest warrant alone was sufficient to authorize the entry into a person's home to effect his arrest." *Id.* at 214 n. 7, 101 S.Ct. at 1648 n. 7. The Court restated the reason for the rule: "Because an arrest warrant authorizes the police to deprive a person of his liberty, it necessarily also authorizes a limited invasion of that person's privacy interest when it is necessary to arrest him in his home." *Id.* The Court noted this reason is inapplicable to a third party whose home is entered to execute an arrest warrant naming another: "Such a warrant embodies no judicial determination whatsoever regarding the person whose home is to be searched. Because it does not authorize the police to deprive the third person of his liberty, it cannot embody any derivative authority to deprive this person of his interest in the privacy of his home." *Id.* Hence, deprivation of the homeowner's right to privacy must be based on an independent determination by a magistrate, evidenced by a search warrant, that the person named in the arrest warrant is probably in the home.

■ *Steagald* thus reaffirms as a rule of positive law the *Payton* principle that an arrest warrant alone is sufficient to protect the fourth amendment interests of the person named in the warrant when arrested in his home, restates the rationale for the rule,

and incorporates it into the fabric of fourth amendment law. The Court continued this process in *Michigan v. Summers.*

The question in *Michigan v. Summers* was whether a warrant to search a home for contraband implicitly carries with it authority to detain the occupants while the search is conducted. The Court held that it did. 452 U.S. at 705, 101 S.Ct. at 2595. The Court rested its decision squarely upon an analogy to the *Payton* rule that an arrest warrant afforded sufficient protection to a suspect's privacy interest in the home entered to arrest him, which the Court referred to and treated as the holding of *Payton.* The Court reasoned that if, as *Payton* holds, a warrant authorizing an invasion of an individual's liberty interest implicitly carries limited authority to invade his privacy interest, then a warrant authorizing an invasion of an individual's privacy interest implicitly carries limited authority to invade his liberty interest. As the Court said:

> In *Payton v. New York,* 445 U.S. 573 [100 S.Ct. 1371, 63 L.Ed.2d 639], we held that police officers may not enter a private residence to make a routine felony arrest without first obtaining a warrant. In that case we rejected the suggestion that only a search warrant could adequately protect the privacy interests at stake, noting that the distinction between a search warrant and an arrest warrant was far less significant than the interposition of the magistrate's determination of probable cause between the zealous officer and the citizen:
>
> > "It is true that an arrest warrant requirement may afford less protection than a search warrant requirement, but it will suffice to interpose the magistrate's determination of probable cause between the zealous officer and the citizen. If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, an

arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Id.,* at 602–03 [100 S.Ct. at 1388].

That holding is relevant today. If the evidence that a citizen's residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen's privacy is justified, it is constitutionally reasonable to require that citizen to remain while officers of the law execute a valid warrant to search his home. Thus, for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted.

*Id.* at 704–05, 101 S.Ct. at 2595 (footnotes omitted).

A lower federal court cannot responsibly decline to follow a principle directly and explicitly stated by the Supreme Court as a ground of decision and subsequently applied by the Supreme Court as an integral part of a systematic development of constitutional doctrine. *See United States v. LaBinia,* 614 F.2d 1207, 1210 (9th Cir.1980) (unless the Supreme Court expressly limits its opinion to the facts before it, it is the principle which controls and not the specific facts upon which the principle was decided) citing *Walker v. Georgia,* 417 F.2d 5, 8 (5th Cir. 1969); *Hendricks County Rural Electric Membership Corp. v. NLRB,* 627 F.2d 766, 769 (7th Cir.1980) (decisions of the Supreme Court and their clear implications are absolutely binding on the inferior federal courts); *United States v. Bukowski,* 435 F.2d 1094, 1101 (7th Cir.1970) (lower federal courts cannot depart from an analytical construct uniformly adhered to by the Supreme Court); *Public Service Co. of New Mexico v. General Electric Co.,* 315 F.2d

306, 310 n. 6 (10th Cir.1963) (lower federal courts must recognize clear, direct, explicit, and unqualified statements of the Supreme Court).

The Supreme Court cannot limit its constitutional adjudication to the narrow facts before it in a particular case. In the decision of individual cases the Court must and regularly does establish guidelines to govern a variety of situations related to that presented in the immediate case. The system could not function if lower courts were free to disregard such guidelines whenever they did not precisely match the facts of the case in which the guidelines were announced.

■ Since under *Payton* the entry to arrest did not violate Underwood's fourth amendment rights, and the evidence seized was in plain view, *see Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the trial court's order suppressing the evidence must be reversed.

Reversed and remanded for proceedings consistent with this opinion.

SKOPIL, Circuit Judge, with whom TANG, FLETCHER and PREGERSON, Circuit Judges, join, dissenting:

Today the majority holds that police may enter and search any private dwelling for a suspect with only an arrest warrant and "a reason to believe" the suspect is there. Because I cannot agree with the majority's unwarranted extension of *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), or with the rule announced, I respectfully dissent. I would hold that the principles of *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), and our own decision in *United States v. Prescott,* 581 F.2d 1343, 1350 (9th Cir.1978), govern here. I would hold that Underwood, as an invited overnight guest with an expectation of privacy in the house,[1] can challenge the entry with-

---

1. The majority does not dispute that Underwood had a legitimate expectation of privacy. The record supports the finding that Underwood, as an invited overnight guest, had a

legitimate expectation of privacy in the Duckett house. *See United States v. Robertson,* 606 F.2d 853, 858 n. 2 (9th Cir.1979). *See also Rakas v. Illinois,* 439 U.S. 128, 141, 149, 99

out a search warrant, and that the search was unlawful under the fourth amendment because no search warrant was obtained.

## I.

The majority's extension of the narrow *Payton* exception to the search warrant requirement is based on the assertion that one cannot have greater rights in someone else's dwelling than one has in one's own home. This rationale misstates the issue and rests on an erroneous reading of the Supreme Court's more recent decision in *Steagald.* In holding that an arrest warrant may substitute for a search warrant, the majority rule fails to protect the privacy interests of Underwood and the residents of the Duckett home. Under the majority rule, police may search any home with only an arrest warrant and "a reason to believe" the suspect may be found there. The rule eliminates a judicial determination of probable cause to search and judicial limitation on the scope of the search.

The majority holds that an arrest warrant adequately protected Underwood's privacy interests. *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) is cited for the proposition that an arrest warrant authorizes entry into the suspect's own home. Since the issuance of an arrest warrant would have safeguarded Underwood's constitutional rights at his own home, the majority asserts, an arrest

warrant must adequately safeguard his rights at anyone else's home. The majority concludes that only the privacy rights of persons not named in the arrest warrant can be violated by entry and search without a search warrant, and that Underwood cannot vicariously assert the rights of others.[2] *See Rakas v. Illinois,* 439 U.S. 128, 133–34, 99 S.Ct. 421, 424–25, 58 L.Ed.2d 387 (1978) ("Fourth Amendment rights are personal rights which ... may not be vicariously asserted.") (quoting *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969)).

This *a fortiori* argument, however, necessarily requires extending the *Payton* exception to the search warrant requirement. There are several reasons why *Payton* should not be extended and the principles of *Steagald* should govern this case.[3]

In *Steagald,* police entered the home of Steagald searching for Ricky Lyons, for whom they had an arrest warrant. 451 U.S. at 206, 101 S.Ct. at 1644. No search warrant was obtained for the residence, however. During their search for Lyons, the officers discovered evidence which was later used to convict Steagald. The Court reversed Steagald's conviction, holding that a warrant for Lyons' arrest did not authorize the police to enter Steagald's home. *Id.* at 213, 223, 101 S.Ct. at 1648, 1653. The search was challenged by Steagald, the owner of the home, not by Lyons, the per-

S.Ct. 421, 429, 433, 58 L.Ed.2d 387 (1978); *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

**2.** This argument is similar to an argument made in Groot, *Arrests in Private Dwellings,* 67 Va.L.Rev. 275, 281 n. 44 (1981). The Eighth Circuit has accepted this rationale based on *Payton,* and, without serious consideration of the privacy interests at stake, extended it to bar a challenge by a suspect after entry of a third party's home. *United States v. Clifford,* 664 F.2d 1090, 1093 (8th Cir.1981). *See also United States v. Jones,* 641 F.2d 425, 428 n. 3 (6th Cir.1981) (dictum); *State v. Miller,* 316 N.W.2d 23, 28 (Minn.1982) (dictum). Similarly, the Seventh Circuit in *United States v. Jones,* 696 F.2d 479, 487 (7th Cir.1982), has extended this rationale to justify entry and search of motel rooms for persons for only one of whom police had an arrest warrant.

**3.** The majority rule is an extension of *Payton* which I believe to be unwarranted. The Supreme Court has often admonished us to proceed cautiously in extending a case beyond its issue and facts. *E.g., United States v. Neifert-White Co.,* 390 U.S. 228, 231, 88 S.Ct. 959, 961, 19 L.Ed.2d 1061 (1968).

The reasoning for declining to extend a holding beyond its facts was stated long ago in *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 399–400, 5 L.Ed. 257 (1821): "The question actually before the court is investigated with care and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." *See generally* 1B J. Moore, *Moore's Federal Practice* ¶ 0.402[2] (1982).

son named in the arrest warrant. The Court found that "an arrest warrant—as opposed to a search warrant—[was not] adequate to protect the Fourth Amendment interests of [a person] not named in the warrant . . . ." *id.* at 212, 101 S.Ct. at 1647, against an otherwise warrantless search of his home.

The majority asserts that it makes no difference that Underwood was in the home of another person and not in his own home. The search of a third-party home, however, is fundamentally distinguishable under *Steagald.* The Court specifically stated that the issue in *Steagald,* entry of a third-party home to execute an arrest warrant, remained unresolved by *Payton.* 451 U.S. at 207 n. 2, 101 S.Ct. at 1645 n. 2.

The *Payton* statement upon which the government and the majority base their reasoning is:

"Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the *limited authority to enter a dwelling in which the suspect lives* when there is reason to believe the suspect is within."

445 U.S. at 603, 100 S.Ct. at 1388 (emphasis added).

In *Steagald,* the Court stated the *Payton* reasoning:

In *Payton,* of course, we recognized that an arrest warrant alone was sufficient to authorize the entry into a person's home to effect his arrest . . . Because an arrest warrant authorizes the police to deprive a person of his liberty, it necessarily also authorizes a limited invasion of that person's privacy interest when it is necessary to arrest him in his home. *This analysis, however, is plainly inapplicable when the police seek to use an arrest warrant as legal authority to enter the home of a third party to conduct a search. . . .*

451 U.S. at 214 n. 7, 101 S.Ct. at 1648 n. 7 (emphasis added). No different principle applies when police search for a person rather than an object. *Id.* The search of a third party's home for the subject of an arrest warrant is thus fundamentally different from the limited authority to enter a suspect's own home approved in *Payton.*

Both *Payton* and *Steagald* expressly limit, again and again, the *Payton* rule to an arrest entry of one's own home. *See, e.g., Payton,* 445 U.S. at 603, 100 S.Ct. at 1388 ("it is constitutionally reasonable to require him to open *his* doors") (emphasis added); *id.* ("an arrest warrant . . . implicitly carries with it the limited authority to enter a dwelling *in which the suspect lives . . .*") (emphasis added); *Steagald,* 451 U.S. at 214 n. 7, 101 S.Ct. at 1648 n. 7 ("in *Payton,* of course, we recognized that an arrest warrant alone was sufficient to authorize the entry into *a person's home* to effect his arrest.") (emphasis added); *id.* at 221, 101 S.Ct. at 1652 ("an arrest warrant alone will suffice to enter a *suspect's own residence* to effect his arrest.") (emphasis added).[4]

The majority's rule also conflicts with the view of the law espoused by the Ninth Circuit in *United States v. Prescott,* 581 F.2d 1343, 1350 (9th Cir.1978). In *Prescott,* which involved facts similar to *Payton,* we overturned the conviction of a homeowner whose home had been entered and searched by police officers who had obtained no warrant of any kind. In holding that "absent exigent circumstances, police who have probable cause to arrest a felony suspect must obtain a warrant before entering a dwelling to carry out the arrest," *id.* at 1350, we focused on the sanctity of the home, and noted that "the [Fourth] Amendment itself gives special emphasis to the protection of people in their houses. . . ." *Id.* at 1348. Thus, although dismissing the "distinction between a search warrant and an arrest warrant [as] an artificial one," we

---

**4.** *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), does not broaden the scope of *Payton* either. The Court applied the *Payton* rationale to hold "that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." 452 U.S. at 704–05, 101 S.Ct. at 2595 (footnotes omitted). The Court limited its holding in several respects. *Id.* at 705 nn. 20, 21, 101 S.Ct. at 2595 nn. 20, 21.

demanded that "[t]he warrant, whatever it be called, must describe 'the place to be searched....'" *Id.* at 1350. The suggestion in *Prescott* is that this court will demand a judicial determination of probable cause to believe that a suspect will be found in the specific place to be searched before a non-exigent, non-consensual entry is justified. In the absence of a clearly contrary opinion of the Supreme Court, we should follow the authority in this circuit.[5] *See Meyerson v. Arizona,* 709 F.2d 1235 at 1237 (9th Cir.1983); *NLRB v. Datapoint Corp.,* 642 F.2d 123, 129 (5th Cir.1981); *Brown v. United States,* 508 F.2d 618, 625 (3d Cir. 1974), *cert. denied,* 422 U.S. 1027, 95 S.Ct. 2621, 45 L.Ed.2d 684 (1975). I proceed to examine the rule suggested by the majority that an arrest warrant authorizes entry into and search of any person's home to effect an arrest.

## II.

Before *Payton,* the Supreme Court recognized only one exception to the search warrant requirement for non-consensual law enforcement searches of private residences, and that is when exigent circumstances justify an entry. *See Johnson v. United States,* 333 U.S. 10, 14–15, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948); *see also United States v. Chadwick,* 433 U.S. 1, 8–11, 97 S.Ct. 2476, 2481–2483, 53 L.Ed.2d 538 (1977) (tracing the search warrant requirement). "When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent." *Johnson,* 333 U.S. at 13–14, 68 S.Ct. at 368–369. "[S]earches conducted outside the judicial process ... are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (footnotes omitted). The narrow exception to this rule in *Payton* is limited by its terms to "authority to enter a dwelling in which the suspect

lives...." 445 U.S. at 603, 100 S.Ct. at 1388.

Only a search warrant fully satisfies the explicit requirements of the fourth amendment that a warrant must "particularly describ[e] the· place to be searched, and the persons or things to be seized." U.S.Const. amend. 4. An arrest warrant describes only the person to be seized; it does not describe any place to be searched. In discussing the necessity of a search warrant in *Steagald,* the Supreme Court stated:

> However, while an arrest warrant and a search warrant both serve to subject the probable cause determination of the police to judicial review, the interests protected by the two warrants differ. An arrest warrant is issued by a magistrate upon a showing that probable cause exists to believe that the subject of the warrant has committed an offense and thus the warrant primarily serves to protect an individual from an unreasonable seizure. A search warrant, in contrast, is issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place, and therefore safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police.

451 U.S. at 213–14, 101 S.Ct. at 1648.

Our inquiry should be: Since Underwood had both liberty interests and privacy interests, what means are necessary to protect them? As the Supreme Court stated in *Steagald:*

> Thus, whether the arrest warrant issued in this case adequately safeguarded the interests protected by the Fourth Amendment depends upon what the warrant authorized the agents to do.... [T]he warrant therefore authorized the officers to seize Lyons. However, the agents sought to do more than use the warrant to arrest Lyons in a public place or in his home; instead, they relied on the

**5.** I recognize that *Prescott* was decided before *Payton.* Nevertheless, this circuit continues to cite *Prescott's* holding with approval. *See, e.g.,*

*United States v. Blake,* 632 F.2d 731, 733 (9th Cir.1980); *United States v.. Gray,* 626 F.2d 102, 105 (9th Cir.1980).

warrant as legal authority to enter the home of a third person based on their belief that Ricky Lyons might be a guest there.... Thus, while the warrant in this case may have protected Lyons from an unreasonable seizure, it did absolutely nothing to protect petitioner's privacy interest in being free from an unreasonable invasion and search of his home.

*Steagald,* 451 U.S. at 213, 101 S.Ct. at 1648.

Arrest warrants, as compared to search warrants, protect different interests and entail different requirements. Underwood had both privacy interests and liberty interests at stake. Nevertheless, the majority finds that requiring a search warrant to enter the Duckett home would give Underwood greater rights than he had at his home. This argument simply misstates the question by focusing on some quantum of rights rather than adequate means of protecting the rights concededly at issue.

Underwood had the same rights in Duckett's home, in which he had an expectation of privacy, as he would have had in his own home. Although *Payton* authorizes entry to one's home to arrest, it does not authorize a warrantless search of any residence. Underwood had the right to a judicial determination that it is necessary to search a specific place. An arrest warrant expressly or impliedly names one's home as the place where one may be found. It "implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton,* 445 U.S. at 603, 100 S.Ct. at 1388. When police go to other persons' homes to search for a suspect, however, the arrest warrant simply does not contain this minimum protection as to the suspect's own rights. There has been no judicial identification of the place to be searched. *Steagald,* 451 U.S. at 213–14, 220, 101 S.Ct. at 1648, 1651. "The warrant, whatever it be called, [does not] describe 'the place to be searched' ...." *Prescott,* 581 F.2d at 1350.

The majority asserts that *Payton* "explicitly rejected the argument that a separate search warrant based on probable cause to believe a suspect was in a particular dwelling was necessary to protect the interests of the person named in an arrest warrant." In view of the consistent limitation of the *Payton* exception to one's own home, this assertion is an inaccurate statement. Taken in context, *Payton* can be read to say only that it is unnecessary to seek a judicial determination of probable cause to search a particular dwelling when the dwelling to be searched is the suspect's own home.

In finding that the arrest warrant adequately protected Underwood's fourth amendment interests, the majority implicitly holds that an arrest warrant may substitute for a search warrant when officers find it necessary to search someone else's home for a suspect. I do not believe *Payton* can reasonably be read so broadly. I recognize that in *Steagald* the homeowner asserted the privacy rights at issue there. Underwood had the same rights here. Because two distinct interests of Underwood's were implicated by the search of the Duckett residence, a search warrant, identifying the place to be searched, was required. As the Supreme Court stated in *Steagald:*

> [P]etitioner's only protection from an illegal *entry and search* was the agent's personal determination of probable cause. In the absence of exigent circumstances, we have consistently held that such judicially untested determinations are not reliable enough to justify an entry into a person's home to arrest him without a warrant, or a search of a home for objects in the absence of a search warrant. *Payton v. New York, supra; Johnson v. United States, supra.* We see no reason to depart from this settled course when the search of a home is for a *person* rather than an *object.*

451 U.S. at 213–14, 101 S.Ct. at 1648 (footnote omitted) (emphasis added).

Moreover, the majority rule permits searches of any home based only on "a reason to believe" the subject of an arrest warrant is present. The justification for the search may thus be made in the field on less than probable cause. The *Steagald* court expressly rejected such a rule:

A contrary conclusion—that the police, acting alone and in the absence of exigent circumstances, may decide when there is sufficient justification for searching the home of the third party for the subject of an arrest warrant—would create a significant potential for abuse. Armed solely with an arrest warrant for a single person, the police could search all the homes of that individual's friends and acquaintances. . . . Moreover, an arrest warrant may serve as the pretext for entering a home in which the police have a suspicion, but not probable cause to believe, that illegal activity is taking place. *Cf. Chimel v. California,* 395 U.S. 752 [89 S.Ct. 2034, 23 L.Ed.2d 685] (1969). 451 U.S. at 215, 101 S.Ct. at 1649 (citing *Lankford v. Gelston,* 364 F.2d 197 (4th Cir. 1966) enjoining police practice under which 300 homes were searched pursuant to arrest warrants for two fugitives).

The Court further noted the government's concession that there is less potential for abuse where the implicit entry authorization of an arrest warrant is confined to the suspect's own residence. This limited authority does not free police to search for the suspect in anyone else's house without obtaining a particularized judicial determination that the suspect is present. 451 U.S. at 215 n. 8, 101 S.Ct. at 1649 n. 8. The Court then rejected the argument, also made to this court in this case, that existing remedies, such as suppression motions and damage actions, provide adequate means of redress. The Court stated: "As we observed on a previous occasion, '[t]he [Fourth] Amendment is designed to prevent, not simply to redress, unlawful police action.'" 451 U.S. at 215, 101 S.Ct. at 1649

(quoting *Chimel v. California,* 395 U.S. 752, 766 n. 12, 89 S.Ct. 2034, 2042 n. 12, 23 L.Ed.2d 685 (1969)). Here, the stark reality is that an illegal entry and search occurred based only on an informant's tip.[6] The majority rule, however, offers no means by which to prevent unlawful police action.

As a practical matter, the prospect of a challenge by Underwood based on his own privacy rights would have provided a strong inducement for the police officers to comply with the fourth amendment by obtaining a search warrant to search Duckett's home for Underwood. In fact, a challenge from the subject of an arrest warrant is the *only* real deterrent to violations of the search warrant requirement as spelled out in *Steagald.* Since police who enter a dwelling to effect an arrest presumably are searching for the subject, not for evidence that may incriminate others who may live there, they will have little, if any, incentive to obtain a search warrant if the suspect cannot challenge the entry. On the other hand, the owner of the home will not have occasion to challenge an unlawful entry except in the unusual case where the police come upon plain-view evidence that incriminates the owner, as in *Steagald,* 451 U.S. at 206–07, 101 S.Ct. at 1644–45.

Also, the majority rule creates a difficult question for police in determining when to get a search warrant. I believe a "bright line" rule that police must obtain a search warrant to enter and search a dwelling other than a suspect's own home would better protect both private persons and law enforcement. Authority to search a dwelling, and the scope of the search, would be determined beforehand rather than at a later suppression hearing.[7]

**6.** The informant first told the police that Underwood was living in the area and intermittently resided at three different residences—two houses in Delano, California and a third house in Richgrove, California. The informant later gave the police "a reason to believe" Underwood might be found at the Richgrove house. The officers here thought the house was Duckett's but made no effort to ascertain the identity of the owners of the residence or of any other persons who had the legal right to occupy it. Under the majority rule, police could have

searched each of the three houses for Underwood based only on an informant's tip.

**7.** The majority rule ignores the traditional function of the search warrant in circumscribing the scope of the search. *See Chadwick,* 433 U.S. at 20 n. 1, 97 S.Ct. at 2488 n. 1 (Blackmun, J., dissenting). The arrest warrant exception would not provide an occasion for the magistrate to place limits on the execution of the warrant within the home. This long-standing protection against unreasonable searches will

## CONCLUSION

The fourth amendment search warrant requirement is designed to prevent the very kind of intrusion that occurred in this case. By providing for a judicial determination of probable cause to believe a particular person is in a particular place, the search warrant requirement acts as an effective check on unwarranted police intrusion into the privacy of every home. Because that vital protective function is not performed by an arrest warrant, it fails to pass constitutional muster as a substitute for a search warrant.

In deference to the privacy interests of persons in the Duckett residence, the police had a constitutional duty to obtain a search warrant before making their entry to search for and arrest Underwood. Having failed to do so, the police violated Underwood's fourth amendment right to be secure in a place where he had a legitimate expectation of privacy. Thus, the district court properly suppressed the evidence seized during that arrest.

I am mindful of our responsibility to faithfully apply the principles set down by the Supreme Court. With all due respect, however, I do not believe *Payton* requires us to create the rule announced by the majority. *Payton* itself is a significant departure from the traditional fourth amendment rule against entry of the home without a search warrant. The *Payton* court was careful to limit the exception to entry to a suspect's own home. The majority rule greatly erodes the long-standing fourth amendment search warrant requirement for non-consensual, non-exigent searches of private residences which assures a judicial determination of probable cause to search a particular place.

I DISSENT.

be lost when police seek a suspect rather than