DAVIS, Judge.
John Walter Lawson ("Lawson") and Margaret (Meg) Elizabeth Lawson Darling ("Darling") (collectively "Plaintiffs") appeal from (1) the 6 March 2013 order of Judge R. Stuart Albright granting the motion to dismiss of Lieutenant Max Creason ("Lieutenant Creason") pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ; and (2) the 24 April 2013 order of Judge William Z. Wood, Jr. granting the motions for summary judgment of Sheriff William Schatzman ("Sheriff Schatzman"), Deputy Sheriff P.J. Mullen ("Deputy Mullen"), Deputy Sheriff Michael Brannon ("Deputy Brannon"), and Corporal Claybourn Harper ("Corporal Harper") (collectively "the Forsyth Defendants") pursuant to Rule 56 of the North Carolina Rules of Civil Procedure. After careful review, we affirm Judge Albright's 6 March 2013 order and affirm in part and vacate in part the 24 April 2013 order of Judge Wood.
Factual Background
As discussed in more detail herein, the factual record is not fully developed, making it difficult-if not impossible-to set out a full recitation of the facts giving rise to this action. However, based on our extensive review of the record and guided by our prior opinion dismissing Plaintiffs' earlier appeal, see Lawson v. Lawson,--- N.C.App. ----, 758 S.E.2d 706 (2014) (unpublished), the following is a summary of the facts that we are able to discern.
On 11 June 2010, warrants were issued by the Cary Police Department in Wake County, North Carolina charging Lawson with (1) assault on a female; and (2) violation of a protective order. Both offenses were allegedly committed against Lawson's ex-wife, Heidi Cavanagh Lawson ("Heidi").
Lieutenant Creason, Heidi's brother-in-law and a police officer employed by the Kernersville Police Department in Forsyth County, North Carolina, learned of the existence of the outstanding warrants and of the fact that Lawson was physically present at the Forsyth County home of Darling (Lawson's sister), which was located at 6580 Riverton Road in Walkertown, North Carolina. Upon receipt of this information and after verifying the existence of the warrants, Lieutenant Creason called the Forsyth County Sheriff's Office's dispatch center on 12 June 2010 and informed Sheriff's Office personnel of Lawson's location and the outstanding warrants against him. Copies of the warrants appear to have been electronically received and printed out by the Sheriff's Office on that same date at approximately 12:59 p.m. At 1:24 p.m., Deputies Mullen and Brannon went to Darling's home, entered the residence, and arrested Lawson.
On 21 December 2012, Plaintiffs filed an unverified pro secomplaint against Heidi, Jacqueline Cavanagh Hughes[1] ("Hughes"); Mark Caprise[2] ("Caprise"); Sheriff Schatzman; Deputy Mullen; Deputy Brannon; Corporal Harper; Kernersville Police Chief Kenneth Gamble ("Chief Gamble"); Lieutenant Creason; and Hartford Insurance Company. The complaint alleged that (1) there was an ongoing domestic dispute between Lawson and Heidi; (2) on 10 June 2010, Hughes falsely reported to law enforcement authorities that Lawson had raped Heidi; (3) on 12 June 2010, Lieutenant Creason falsely told the Forsyth County Sheriff's Office that the Kernersville Police Department was issuing warrants for Lawson's arrest and that Lawson could be located at the home of Darling; (4) on that same date, Deputies Mullen and Brannon unlawfully forced their way into Darling's residence and arrested Lawson; (5) the deputies did not verify the existence of the arrest warrants before arresting Lawson; and (6) no warrants issued by the Kernersville Police Department for Lawson's arrest ever existed.
Plaintiffs' complaint appeared to assert the following legal claims: (1) claims against the Forsyth Defendants, Chief Gamble, Lieutenant Creason, Heidi, Hughes, and Caprise under 42 U.S.C. § 1983 for violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution; (2) claims under the North Carolina Constitution against Lieutenant Creason, Chief Gamble, and the Forsyth Defendants; (3) claims for malicious prosecution against Heidi, Hughes, Lieutenant Creason, Corporal Harper, Deputy Mullen, and Deputy Brannon; (4) claims for abuse of process against Heidi, Hughes, Lieutenant Creason, Corporal Harper, Deputy Mullen, Deputy Brannon, and Caprise; (5) claims for defamation, libel, and slander against Heidi and Caprise; (6) claims for intentional infliction of emotional distress against Heidi, Hughes, and Caprise; (7) a claim for negligent infliction of emotional distress against Heidi; (8) a claim for civil obstruction of justice against Heidi; (9) a claim by Darling for intrusion upon seclusion against Heidi, Hughes, Lieutenant Creason, Deputy Mullen, and Deputy Brannon; (10) a claim for negligent retention and supervision against Sheriff Schatzman and Chief Gamble; and (11) a claim "on the [surety] bond" against Sheriff Schatzman and Hartford Insurance.
On 7 February 2013, Lieutenant Creason, Chief Gamble, and Hughes filed motions to dismiss all claims against them pursuant to Rule 12(b)(6). On 6 March 2013, Judge Albright entered an order dismissing all claims against Lieutenant Creason, Chief Gamble, and Caprise.[3] Judge Albright also partially granted Hughes' motion to dismiss as to Plaintiffs' § 1983 claim against her.
On 2 April 2013, Plaintiffs filed a notice of appeal of Judge Albright's 6 March 2013 order as to Lieutenant Creason and Hughes only. This attempted appeal, however, was dismissed by this Court on 26 July 2013.
On 7 March 2013, the Forsyth Defendants filed a motion for summary judgment as to Plaintiffs' claims against them. In support of their motion, they submitted (1) copies of the arrest warrants issued for Lawson; (2) an affidavit from the Risk Manager of Forsyth County, Teresa Everhart; (3) an affidavit of Ashley Conrad, the "Records Custodian in Communications" for the Forsyth County Sheriff's Office; and (4) Plaintiffs' responses to the Forsyth Defendants' Request for Admissions. In response to the Forsyth Defendants' motion, Plaintiffs submitted a brief as well as a transcript purportedly made from a recording taken on Darling's cellphone by her during Lawson's arrest.
A hearing was held on the Forsyth Defendants' summary judgment motion on 15 and 18 April 2013 before Judge Wood. On 24 April 2013, Judge Wood entered an order granting summary judgment in favor of the Forsyth Defendants and dismissing Plaintiffs' claim against Hartford Insurance.[4] On 21 May 2013, Plaintiffs filed a notice of appeal of the 24 April 2013 order.
On 1 April 2014, this Court dismissed Plaintiffs' appeal on the ground that it was interlocutory because Plaintiffs' claims against Heidi remained outstanding. Lawson v. Lawson,--- N.C.App. ----, 758 S.E.2d 706 (2014) (unpublished). On 21 August 2014, Plaintiffs voluntarily dismissed all remaining claims against Heidi. On that same date, Plaintiffs filed a new notice of appeal both as to Judge Albright's 6 March 2013 order dismissing their claims against Lieutenant Creason and Judge Wood's 24 April 2013 order granting summary judgment in favor of the Forsyth Defendants.
Analysis
As an initial matter, although Plaintiffs' complaint contains a number of claims premised on North Carolina law, their appellate brief challenges only the trial court's rulings as to their § 1983 claims predicated on the alleged violations of the Fourth and Fourteenth Amendments to the United States Constitution. North Carolina Rule of Appellate Procedure 28(b)(6) provides, in relevant part, that "[i]ssues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned." N.C.R.App. P. 28(b)(6). Therefore, we address only Plaintiffs' arguments relating to their claims under § 1983 and deem all other claims contained in their complaint to be abandoned. See Wilkerson v. Duke Univ.,---N.C.App. ----, ----, 748 S.E.2d 154, 161 (2013) ("Plaintiff makes no argument on appeal that the trial court erred in granting summary judgment in favor of defendants with regards to his claims of public stigmatization and negligence. These arguments are deemed abandoned.").
42 U.S.C. § 1983 states, in pertinent part, as follows:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ...
42 U.S.C. § 1983 (2013). This Court has held that "[i]n order to state a claim under § 1983, a plaintiff must allege: (1) that the defendant deprived him of a right secured by the Constitution and laws of the United States; and (2) that defendant acted under color of law." Enoch v. Inman,164 N.C.App. 415, 418, 596 S.E.2d 361, 363 (2004) (citation, quotation marks, and brackets omitted). We now consider the two orders Plaintiffs have appealed from in order to determine whether Plaintiffs' § 1983 claims failed as a matter of law.
I. Judge Albright's Order Granting Motion to Dismiss as to Lieutenant Creason
In their first argument on appeal, Plaintiffs assert that Judge Albright erred in granting Lieutenant Creason's motion to dismiss.[5] Specifically, they contend that when Lieutenant Creason called the Forsyth County Sheriff's Office to report Lawson's location and the existence of the arrest warrants that had been issued against him, "[n]o state interest was being served that warranted that action in his official capacity."[6] We disagree.
The standard of review of an order granting a Rule 12(b)(6) motion is whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true. On appeal, we review the pleadings de novoto determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct.
Gilmore v. Gilmore,--- N.C.App. ----, ----, 748 S.E.2d 42, 45 (2013) (internal citations, quotation marks, and brackets omitted). "A complaint is properly dismissed pursuant to Rule 12(b)(6) when (1) the complaint, on its face, reveals that no law supports the plaintiff's claim; (2) the complaint, on its face, reveals an absence of facts sufficient to make a good claim; or (3) some fact disclosed in the complaint necessarily defeats the plaintiff's claim." Blow v. DSM Pharms., Inc.,197 N.C.App. 586, 588, 678 S.E.2d 245, 248 (2009) (citation omitted), disc. review denied,363 N.C. 853, 693 S.E.2d 917 (2010).
Our appellate courts have recognized the duty of law enforcement officers to serve a properly issued warrant.
When a warrant, valid in form and issued by a court of competent jurisdiction, is placed in the hands of an officer for execution, it is his duty to carry out its demands without delay, and he incurs no liability for its proper execution, however disastrous may be the effect on the person against whom it is issued. If it is regular on its face, he is bound to serve it, and failure to do so would be disobedience of a lawful court order, punishable as contempt.
State v. Harvey,281 N.C. 1, 9, 187 S.E.2d 706, 712 (1972) ; see also Robinson v. City of Winston-Salem,34 N.C.App. 401, 406, 238 S.E.2d 628, 631 (1977) ("[A law enforcement officer's] failure to serve [a] warrant may amount to dereliction of duty[.]").
Here, it is undisputed that two arrest warrants were issued by the Cary Police Department on 11 June 2010, charging Lawson with assault on a female and violation of a protective order.[7] While Plaintiffs' impugn the credibility of the assault allegations made by Heidi and Hughes, they do not challenge on appeal the legal validity of the warrants.
The crux of Plaintiffs' § 1983 claim against Lieutenant Creason appears to be that he was improperly motivated to act by his personal relationship with Heidi and proceeded to use his official position as a law enforcement officer to facilitate Lawson's arrest by notifying the Forsyth County Sheriff's Office that Lawson was present at a certain address in Forsyth County. However, Plaintiffs have failed to cite any cases recognizing a violation of the United States Constitution where a law enforcement officer in one agency notifies a separate law enforcement agency that the subject of an arrest warrant is physically located at a certain address within the jurisdiction of that other agency.
While Plaintiffs' complaint contains the additional allegation that during his conversation with the Forsyth County Sheriff's Office, Lieutenant Creason falsely stated that the Kernersville Police Department had issued the warrants for Lawson's arrest, Plaintiffs' argument in their brief to this Court focuses not on the alleged falsity of that statement during this conversation but rather on the overall legality of his notification to the Forsyth County Sheriff's Office as to (1) the existence of the outstanding warrants; and (2) the presence of Lawson at a specific address in Forsyth County. Furthermore, whatever sanctions may exist under North Carolina law against an officer who makes an untruthful representation under circumstances such as these, Plaintiffs-once again-have failed to provide legal authority that such conduct would rise to the level of a federal constitutional violation.[8] For these reasons, Judge Albright did not err in granting Lieutenant Creason's motion to dismiss.
II. Judge Wood's Order Granting Summary Judgment to the Forsyth Defendants
Plaintiffs' next argument is that Judge Wood erred in granting the Forsyth Defendants' motion for summary judgment.
It is well-settled that the standard of review for an order granting a motion for summary judgment requires a two-part analysis of whether, on the basis of materials supplied to the trial court, there was a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. The moving party has the burden of demonstrating the lack of any triable issue of fact and entitlement to judgment as a matter of law. The evidence produced by the parties is viewed in the light most favorable to the non-moving party.
Hardin v. KCS Int'l, Inc.,199 N.C.App. 687, 695, 682 S.E.2d 726, 733 (2009) (internal citations and quotation marks omitted). "An issue is 'genuine' if it can be proven by substantial evidence and a fact is 'material' if it would constitute or irrevocably establish any material element of a claim or a defense." In re Alessandrini,--- N.C.App. ----, ----, 769 S.E.2d 214, 216 (2015) (citation omitted).
We address the § 1983 claims of Lawson and Darling separately. As explained below, for purposes of the Fourth Amendment, the right of Darling to be free from an unreasonable search of her home is separate and distinct from the right of Lawson to be free from an unlawful arrest.
A. Darling's § 1983 Claims Against the Forsyth Defendants
Specifically, Darling contends that because Deputies Brannon and Mullen did not possess a search warrant when they entered her home, her Fourth Amendment rights were violated and the entry of summary judgment in favor of the Forsyth Defendants was improper. The Forsyth Defendants, conversely, assert that because the arrest warrants for Lawson were valid and in existence at the time of their entry into Darling's home, the issuance of a search warrant for her residence was unnecessary. In support of their position, they rely on N.C. Gen.Stat. § 15A-401(e)(1), which states as follows:
(e) Entry on Private Premises or Vehicle; Use of Force.-
(1) A law-enforcement officer may enter private premises or a vehicle to effect an arrest when:
a. The officer has in his possession a warrant or order or a copy of the warrant or order for the arrest of a person, provided that an officer may utilize a copy of a warrant or order only if the original warrant or order is in the possession of a member of a law enforcement agency located in the county where the officer is employed and the officer verifies with the agency that the warrant is current and valid; or the officer is authorized to arrest a person without a warrant or order having been issued,
b. The officer has reasonable cause to believe the person to be arrested is present, and
c. The officer has given, or made reasonable effort to give, notice of his authority and purpose to an occupant thereof, unless there is reasonable cause to believe that the giving of such notice would present a clear danger to human life.
N.C. Gen.Stat. § 15A-401(e)(1) (2013).
However, their argument fails to take into account caselaw articulating the right of a third-party such as Darling to be free from an unreasonable entry into her residence where officers are attempting to serve an arrest warrant on a person who does not live at that residence. The United States Supreme Court directly addressed this distinction in Steagald v. U.S.,451 U.S. 204, 68 L.Ed.2d 38 (1981). In Steagald,law enforcement officers entered Steagald's home with a valid arrest warrant for another individual, Ricky Lyons, who was believed to be present at Steagald's residence. While on the premises, the officers observed a substance they believed to be cocaine. Id.at 206-07, 68 L.Ed .2d at 42. Based on this observation, the officers obtained a search warrant for the home that ultimately led to the discovery of 43 pounds of cocaine. Steagald was arrested and indicted on federal drug charges based on this evidence. Id.at 207, 68 L.Ed.2d at 42. Steagald moved to suppress the cocaine on Fourth Amendment grounds, arguing that it was illegally obtained because the officers had failed to obtain a search warrant for their original entry into his home and had instead relied solely on the arrest warrant for Lyons as the basis for the initial entry, which led to the cocaine's discovery. Id.
The Supreme Court stated that "the narrow issue before us is whether an arrest warrant-as opposed to a search warrant-is adequate to protect the Fourth Amendment interests of persons not named in the warrant, when their homes are searched without their consent and in the absence of exigent circumstances." Id.at 212, 68 L.Ed.2d at 45-46. The Court reasoned that "while the warrant in this case may have protected Lyons from an unreasonable seizure, it did absolutely nothing to protect [Steagald's] privacy interest in being free from an unreasonable invasion and search of his home." Id.at 213, 68 L.Ed.2d at 46. Based upon this reasoning, the Court ultimately held that
[i]n sum, two distinct interests were implicated by the searchat issue here-Ricky Lyons' interest in being free from an unreasonable seizure and [Steagald's] interest in being free from an unreasonable search of his home. Because the arrest warrant for Lyons addressed only the former interest, the search of [Steagald's] home was no more reasonable from [Steagald's] perspective than it would have been if conducted in the absence of any warrant. Since warrantless searches of a home are impermissible absent consent or exigent circumstances, we conclude that the instant search violated the Fourth Amendment.
Id.at 216, 68 L.Ed.2d at 48 (emphasis added).
There appears to be no dispute over the fact that Deputies Brannon and Mullen possessed only arrest warrants for Lawson and did not also have a search warrant for Darling's home. Therefore, the only lawful bases upon which the officers could have lawfully entered her home would have been consent or the existence of exigent circumstances. See State v. Bogin,66 N.C.App. 184, 185, 310 S .E.2d 640, 642 ("The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, prohibits entry into the home of a person not named in an arrest warrant to search for the person named in the warrant, absent consent or exigent circumstances."), disc. review denied,310 N .C. 478, 312 S.E.2d 886 (1984).
Having set out these legal principles applicable to Darling's § 1983 claims, we must determine whether the Forsyth Defendants presented sufficient evidence to the trial court in support of their motion so as to negate the existence of any genuine issue of material fact and to establish their entitlement to judgment as a matter of law. See Summey v. Barker,357 N.C. 492, 496, 586 S.E .2d 247, 249 (2003) ("On appeal of a trial court's allowance of a motion for summary judgment, we consider whether, on the basis of materials supplied to the trial court, there was a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law."); see also Steel Creek Dev. Corp. v. Smith,300 N.C. 631, 637, 268 S.E.2d 205, 210 (1980) ("If the movant fails to carry his burden, the opposing party does not have to respond and summary judgment is not proper regardless of whether he responds or not.").
Because the factual record in this case is not sufficiently developed, we conclude that we are unable to evaluate the legality of the deputies' entry into Darling's home. In support of their motion for summary judgment, the Forsyth Defendants did not rely on any deposition testimony. Nor did they submit affidavits from any of the Forsyth Defendants themselves or from anyone else who was present during the entry into Darling's home on 12 June 2010. Instead, they submitted two affidavits along with their motion. First, they filed the affidavit of Teresa Everhart, the Risk Manager of Forsyth County, who testified as to whether any liability insurance coverage existed for the Forsyth County Sheriff's Office on 12 June 2010. Second, the Forsyth Defendants submitted the affidavit of Ashley Conrad, a records custodian for the Forsyth County Sheriff's Office. Conrad's affidavit states, in pertinent part, as follows:
6. I am aware and have personal knowledge the attached Event Report is a true and accurate copy of the original maintained in the Forsyth County Sheriff's Office.
7. The Notes section of the record reveals that on June 12, 2010, at 12:58:33 hours (12 o'clock, 58 minutes, 33 seconds p.m.) the Sheriff's Office was "holding and checking with NCAWARE and Mag (Magistrate's) Office to see if the process can be printed." The process to be printed was a Warrant for Arrest on John Walter Lawson, DOB 1/28/1977.
8. The Notes section of this record also reveals and otherwise indicates that on June 12, 2010 at 12:59:42 hours (12 o'clock, 59 minutes, 42 seconds p.m.) the Magistrate's Office had printed off the paper (warrants) and are holding it until advised further.
9. The "Nature" of the Event Report was labeled "Warrant for Arrest" and the date/time received was June 12, 2010 at 12:48:05 hours (12 o'clock, 48 minutes, 5 seconds p.m.).
10. Under the times section of the Event Report, Officer M.D. Brannon first arrived at the scene at 13:24:23 hours (1 o'clock, 24 minutes, 23 seconds p.m.)
11. In other words, the Sheriff's Office verified and had printed copies of the warrant(s) for arrest on John Walter Lawson, before Deputy P.J. Mullen arrested him. The warrant(s) or process was printed at 13:28:42 hours, some 25 minutes before Deputy Mullen arrived on the scene to arrest John Walter Lawson.
It appears that the only other evidentiary materials that were submitted by the Forsyth Defendants in support of their motion for summary judgment were Plaintiffs' responses to their Request for Admissions pursuant to Rule 36 of the North Carolina Rules of Civil Procedure. Copies of the arrest warrants were attached to the Request for Admissions.
We believe the documents submitted by the Forsyth Defendants in support of their motion were insufficient to support the entry of summary judgment in favor of the Forsyth Defendants as to Darling's claims under § 1983. Everhart's affidavit lacks any information at all about the subject incident itself. Conrad's affidavit establishes, at most, that unknown personnel at the Forsyth County Sheriff's Office in conjunction with the magistrate's office verified the existence of, and printed out, the arrest warrants prior to Lawson's arrest. Her affidavit sheds no light on the factual circumstances of the entry into Darling's residence by Deputies Brannon and Mullen.
With regard to Plaintiffs' responses to the Forsyth Defendants' Request for Admissions, Plaintiffs' responses related primarily to the validity of the arrest warrants, the date of their issuance, and the date of Lawson's arrest. With regard to the deputies' entry into Darling's home, the responses merely reaffirm Darling's position in this lawsuit that she told the deputies they could not remain in her home without a search warrant. Nor do the copies of the arrest warrants attached to the Request for Admissions provide information relevant to the legality of the initial entry into Darling's home.
We note that Plaintiffs' submissions in opposition to the Forsyth Defendants' motion for summary judgment also fail to demonstrate the absence of a genuine issue of material fact as to what transpired at Darling's home. It appears that the only evidence they submitted in opposition to the motion was a copy of a transcript allegedly made from a cellphone recording taken by Darling of the arrest. Even assuming, without deciding, that the transcript was properly authenticated despite the fact that the recording itself was not also submitted, the transcript begins afterthe deputies were already in Darling's home and, as such, it sheds no light on the manner of the deputies' initial entry.
Therefore, we conclude that the trial court lacked sufficient evidence to grant summary judgment in favor of the Forsyth Defendants as to Darling's claims under § 1983. Accordingly, we must vacate that portion of the trial court's order and remand for further proceedings. See MCC Outdoor, LLC v. Town of Wake Forest,222 N.C.App. 70, 71, 729 S.E.2d 694, 695 (2012) ("Because there are genuine issues of material fact, summary judgment was not appropriate for either party, and we reverse the order of the trial court and remand for further proceedings.").[9]
B. Lawson's § 1983 Claims Against the Forsyth Defendants
The final issue before us is whether the trial court erred when it granted the Forsyth Defendants' motion for summary judgment as to Lawson's § 1983 claims. We find it instructive to examine federal caselaw analyzing the legal issue raised by his claims-that is, whether a person arrested at the residence of a third-party pursuant to a valid arrest warrant can establish a constitutional violation based on the absence of a search warrant.
The Ninth Circuit addressed this issue in U.S. v. Underwood,717 F.2d 482 (9th Cir.1983), cert. denied,465 U.S. 1036, 79 L.Ed.2d 707 (1984). In Underwood,the defendant escaped from a federal correctional institution and a warrant was issued for his arrest. Id.at 483. An informant contacted law enforcement officers and told them that the defendant could be found at the home of a third party. Id.Acting under the authority of the arrest warrant, but without obtaining a search warrant, the police surrounded the third party's house, announced their presence, and hearing no response, made a forced entry. Id.The officers then located the defendant in the house, armed with a hand gun. While handcuffing him, one of the officers noticed, in plain view, a shotgun and ammunition. Id.
The defendant was indicted for possession of an unregistered firearm and possession of a firearm by a felon. He moved to suppress the admission of the weapons on the ground that the entry into the third party's home without a search warrant violated hisFourth Amendment rights. Id.
The Ninth Circuit noted that "[i]n Payton[v. New York,445 U.S. 573, 63 L.Ed.2d 639 (1980) ], the Supreme Court explicitly rejected the argument that a separate search warrant based on probable cause to believe a suspect was in a particular dwelling was necessary to protect the interests of the person named in an arrest warrant. Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Id.(citation and quotation marks omitted).
The Ninth Circuit found no basis to distinguish Paytonon the ground
that the person named in the arrest warrant in Paytonwas in his own home, while in this case the person named in the arrest warrant, [the defendant], was in the home of a third person. For the purpose of determining whether [the defendant's] rights were violated, nothing turns on this difference. A person has no greater right of privacy in another's home than in his own. If an arrest warrant and reason to believe the person named in the warrant is present are sufficient to protect that person's fourth amendment privacy rights in his own home, they necessarily suffice to protect his privacy rights in the home of another.
The right of a third party notnamed in the arrest warrant to the privacy of his home may not be invaded without a search warrant. But this right is personal to the home owner and cannot be asserted vicariously by the person named in the arrest warrant.
Id.at 483-84 (internal citations and quotation marks omitted and emphasis added); see also U.S. v. Pruitt,458 F.3d 477, 481-82 (6th Cir.2006) (holding that where defendant was arrested based on valid arrest warrant at third party's home that law enforcement officers entered without first obtaining search warrant, defendant could not establish violation of his own Fourth Amendment rights), cert. denied,549 U.S. 1283, 167 L.Ed.2d 325 (2007).
We believe the same reasoning applies here. Because valid arrest warrants existed for Lawson at the time of his arrest, the deputies did not violate his Fourth Amendment rights by arresting him even though they entered Darling's home without a search warrant to effectuate the arrest. It would be logically inconsistent to conclude that Lawson was afforded greater protections under the Fourth Amendment at the home of his sister than he would have been entitled to had he been arrested in his own home. Thus, the trial court did not err in granting the Forsyth Defendants' motion for summary judgment as to Lawson's § 1983 claims.
Conclusion
For the reasons stated above, Judge Albright's 6 March 2013 order is affirmed. Judge Wood's 24 April 2013 order is affirmed as to all claims asserted by Plaintiffs in this action against the Forsyth Defendants except for Darling's claims under § 1983. As to these claims alone, we vacate the 24 April 2013 order and remand for further proceedings not inconsistent with this opinion.
AFFIRMED IN PART; VACATED AND REMANDED IN PART.
Judges STROUD and DILLON concur.
Report per Rule 30(e).
Opinion
Appeal by plaintiffs from orders entered 7 March 2013 by Judge R. Stuart Albright and 24 April 2013 by Judge William Z. Wood, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 19 March 2015.

Hughes is Heidi's sister.

Caprise was Heidi's boyfriend during the time period at issue.

The record is unclear whether Caprise also filed a motion to dismiss pursuant to Rule 12(b)(6), but he was included in Judge Albright's order of dismissal.

Although not contained in the record, Hughes apparently filed a motion for summary judgment as to Plaintiffs' remaining claims against her. On 5 September 2013, Judge Anderson Cromer issued an order granting Hughes' motion. Plaintiffs have not appealed from that order.

Although Judge Albright's order dismissed all of Plaintiffs' claims not only against Lieutenant Creason but also against Gamble and Caprise (as well as Plaintiffs' § 1983 claim against Hughes), Plaintiffs' brief challenges only the dismissal as to Lieutenant Creason. Therefore, any challenge to the dismissal of the other defendants named in Judge Albright's order is deemed abandoned. See N.C.R.App. P. 28(b)(6).

Notably, in their appellate brief, Plaintiffs contradict this very assertion by admitting that "arresting John Lawson was a valid state objective[.]"

While Plaintiffs' complaint alleges that no warrants for Lawson's arrest had actually been issued at the time Lieutenant Creason contacted the Forsyth County Sheriff's Office, Plaintiffs state in their brief to this Court that "[b]oth appellants now concede to [sic] the existence of the arrest warrants issued out of Wake County that have been provided to the appellants by counsel for the appellees." Both warrants were attached to Lieutenant Creason's motion to dismiss and were properly before the trial court as they were expressly incorporated by reference in Plaintiffs' pleadings. See Oberlin Capital, L.P. v. Slavin, 147 N.C.App. 52, 60, 554 S.E.2d 840, 847 (2001) ("This Court has ... held that when ruling on a Rule 12(b)(6) motion, a court may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant."). These warrants state on their face that they were issued on 11 June 2010, which was one day prior to Lawson's arrest at Darling's residence.

We note that upon obtaining electronic copies of the arrest warrants prior to Lawson's arrest, the Forsyth Defendants would have been on notice that the warrants had been issued by the Cary Police Department rather than the Kernersville Police Department.

While we do not foreclose the possibility that summary judgment may ultimately be appropriate as to these claims, we reiterate that such a determination cannot properly be made at the present time in light of the incomplete factual record that currently exists. See Ussery v. Taylor, 156 N.C.App. 684, 686, 577 S.E.2d 159, 161 (2003) (reversing premature entry of summary judgment and remanding to give parties "the opportunity to further develop the facts"). We leave it to the discretion of the trial court as to whether the parties should be given the opportunity to file future motions for summary judgment once the facts have been more fully developed.