OPINION
LILLEHAUG, Justice.
This case presents the question of whether police, having obtained an arrest warrant, are required by the United States Constitution or the Minnesota Constitution to obtain a search warrant to enter a third party’s home to arrest the subject of the arrest warrant. Because we conclude that a search warrant is not required, we affirm.
In 2015, appellant Leona Rose deLottin-ville was arrested and charged by complaint with two felonies: fifth-degree possession of methamphetamine and storing methamphetamine paraphernalia in the presence of a child. In ordering deLottin-ville’s pretrial release, the district court imposed conditions that she not possess or consume alcoholic beverages or any mood-altering drugs, and that she be subject to random testing. DeLottinville acknowledged that a violation of the conditions of release could result in her arrest. When she failed several random tests, the State applied for an arrest warrant. The district court found probable cause that deLottin-ville had violated the conditions of her release and issued a warrant for her arrest. DeLottinville does not challenge the lawfulness of the arrest warrant.
Five days later, responding to a tip, officers went to the residence of deLottin- *119 ville’s boyfriend, D.R., in Grove City. D.R. lived in an apartment in the lower level of his parents’ house. Upon arriving, one officer spoke with D.R.’s mother at the front door while the other officer walked around to the back door to prevent anyone from fleeing. At the back of the house, the officer looked through a glass patio door and saw deLottinville. He opened the unlocked door, went inside, and arrested her.
While arresting deLottinville, the officer saw marijuana and a bong on a countertop. There is no dispute that the items were in plain view. Later that day, law enforcement obtained a search warrant for D.R.’s apartment and discovered marijuana, methamphetamine, hydrocodone pills, and drug paraphernalia. The State charged de-Lottinville with two counts of fifth-degree possession of a controlled substance, Minn. Stat. § 152.025, subd. 2(a)(1) (2016); and possession of drug paraphernalia, Minn. Stat. § 152.092 (2016).
On a motion to suppress, the district court ruled that deLottinville’s arrest was illegal because the warrant for her arrest did not authorize police to enter D.R.’s apartment. The district court suppressed all fruits of the arrest and dismissed the charges. The court of appeals unanimously reversed, adopting the reasoning of the United States Court of Appeals for the Eighth Circuit in United States v. Clifford, which held that a guest in a home does not have a greater expectation of privacy than the homeowner under the Fourth Amendment. State v. deLottinville, 877 N.W.2d 199, 204-05 (Minn. App. 2016) (citing 664 F.2d 1090, 1092-93 (8th Cir. 1981)). We granted review to decide whether either the United States Constitution or the Minnesota Constitution requires that the evidence be suppressed.
I.
When reviewing a pretrial order on a motion to suppress evidence, we review the district court’s factual findings under a clearly erroneous standard and its legal determinations de novo. See State v. Lugo, 887 N.W.2d 476, 483-85 (Minn. 2016).
The Fourth Amendment to the United States Constitution states that “no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.” U.S. Const. amend. IV. Fourth Amendment rights are “personal” and “may not be vicariously asserted.” Alderman v. United States, 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). As relevant here, standing to bring a' Fourth Amendment claim hinges on whether de-Lottinville has “a legitimate expectation of privacy in the invaded place.” Rakas v. Illinois, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The parties agree that an overnight guest such as deLottinville has a legitimate expectation of privacy in her host’s home. See Minnesota v. Olson, 495 U.S. 91, 98, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990).
The Supreme Court has not directly addressed the issue in this case, but two of its decisions set the boundaries of the legal analysis. In Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the Court announced that police may enter into the “dwelling in which the suspect lives” to execute an arrest warrant. Id. at 603, 100 S.Ct. 1371. The Court reasoned, “If there is sufficient evidence of a citizen’s participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law,” even though “an arrest warrant requirement may afford less protection than a search warrant requirement.” Id. at 602-03, 100 S.Ct. 1371. The Court explicitly *120 reserved the question of whether the same holds true when the subject of an arrest warrant is believed to be present in another person’s home. Id. at 583, 100 S.Ct. 1371.
The question Payton left open was explored, but not answered, in Steagald v. United States, 451 U.S. 204, 101 S.Ct 1642, 68 L.Ed.2d 38 (1981). In Steagald;, armed with an arrest warrant, police entered a third party’s home to arrest a guest. Id. at 206, 101 S.Ct. 1642. While police searched for the guest inside -the home, they found evidence incriminating the homeowner. Id. at 206-07, 101 S.Ct. 1642. The Court held that, with regard, to the homeowner’s Fourth Amendment rights, the arrest warrant .for the guest did not justify entry into and search of the home. Id. at 216, 101 S.Ct. 1642. The crux of the Court’s reasoning was that, unlike a search warrant, an arrest warrant does not contain “a showing of probable- cause.,to believe that the legitimate object of. a search is located in a particular place.” Id. at 213, 101 S.Ct. 1642. Thus, the homeowner’s “only protection from an illegal entry and search was the agent’s personal determination of probable cause.” Id. But the Court again confined its holding, limiting it to a challenge raised by “a person not named in the warrant.” Id. at 212, 101 S.Ct. 1642.
In a nutshell, Payton describes the Fourth Amendment rights of a homeowner subject to an arrest warrant, while Stedg-ald explains the rights of a homeowner when police execute an arrest wai-rant for a guest. But the Supreme Court has not yet defined the Fourth Amendment rights of those in deLottinville’s position: guests subject to an arrest warrant.
We conclude that Payton sets the ceiling on a guest’s Fourth Amende ment rights. A guest should not receive any greater Fourth Amendment protection when outside her home than when inside it. The home is “first among equals” under the Fourth Amendment, representing the “very core” of a person’s constitutional protections. Florida v. Jardines, — U.S. -, 133 S.Ct. 1409, 1414, 185 L.Ed.2d 495 (2013) (quoting Silverman v. United Stales, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961) (internal quotation marks omitted)). Yet Payton held that it is constitutionally reasonable for police to enter a person’s own home when police have an arrest warrant for that person. Payton, 445 U.S. at 602, 100. S.Ct. 1371. Because Fourth Amendment rights are at their apex in one’s own home, it necessarily follows that the subject of an arrest warrant enjoys no greater protection as a guest in another’s home.
In other words, it is a person’s status as the subject of the arrest warrant, not whether the person is in her own home or the home of another, that is decisive under Payton’s logic. Here, police lawfully obtained an arrest warrant for deLottinville and entered the home knowing that she wds there, so their entry did not violate her Fourth Amendment rights,
Federal circuit courts almost universally agree. Of the ten circuit courts that have addressed this issue, nine have held that a guest’s Fourth Amendment rights are not violated by police entry into another’s home to arrest a guest under a iawful arrest warrant. See Clifford, 664 F.2d at 1093; see also United States v. Bohannon, 824 F.3d 242, 250-52 (2d Cir. 2016); United States v. Hollis, 780 F.3d 1064, 1068-69 (11th Cir.), cert. denied, — U.S. -, 136 S.Ct. 274, 193 L.Ed.2d 200 (2015); United States v. Jackson, 576 F.3d 465, 468 (7th Cir. 2009); United States v. Kern, 336 Fed.Appx. 296, 298 (4th Cir. 2009) (unpublished); United States v. McCarson, 527 F.3d 170, 172-73 (D.C. Cir. 2008); United States v. Pruitt, 458 F.3d *121 477, 482 (6th Cir, 2006); United States v. Agnew, 407 F.3d 193, 197 (3d Cir. 2005); United States v. Underwood, 717 F.2d 482, 484 (9th Cir. 1983). These decisions repeat a simple maxim: “A person has no greater right of privacy in another’s home than in his own.” Underwood, 717 F.2d at 484. Only the First Circuit has disagreed, and then only provisionally, assuming without deciding that a suspect can challenge the search of another’s home during an arrest. United States v. Weems, 322 F.3d 18, 23 n.3 (1st Cir. 2003).
The few state supreme courts that have addressed the issue are in accord with the heavy weight of federal authority. The Massachusetts Supreme Judicial Court allowed entry without a search warrant to arrest a guest under both the Fourth Amendment and Article 14 of the Massachusetts Declaration of Rights, echoing federal circuit courts in stating that “[i]t would produce án unacceptable paradox to afford the subject of an arrest warrant greater protection in the home of another than in his or her own home.” Commonwealth v. Tatum, 466 Mass. 45, 992 N.E.2d 987, 992-93 (2013) (citation and internal quotation marks omitted). Supreme courts in Pennsylvania and Rhode Island came to the same conclusion under the Fourth Amendment. Commonwealth v. Stanley, 498 Pa. 326, 446 A.2d 583, 586-87 (1982); State v. O’Dell, 576 A.2d 425, 427 (R.I. 1990). We are aware of no state supreme court decision to the contrary.
In deciding that a search warrant is not required to enter a third party’s home, we have not overlooked the argument that such a decision does not fully protect the privacy rights of the homeowner. We understand that a homeowner might well be surprised and distressed to learn that police'may enter at any time to arrest a guest. See Steagald, 451 U.S. at 213, 101 S.Ct. 1642 (reasoning that an arrest warrant “did absolutely nothing to protect petitioner’s privacy interest in being free from an unreasonable invasion and search of his home”). Nor do we discount Steag-ald’s warning of a “potential for abuse”: police using arrest warrants as a pretext to enter homes when they lack probable cause of illegal activity. Id. at 215, 101 S.Ct. 1642.
But there is no indication in this case of any such abuse; deLottinville was visible to the officer before he entered the home. And the question of what rights the homeowner may have in such a situation is not before us. See Hollis, 780 F.3d at 1068; United States v. Buckner, 717 F.2d 297, 300 (6th Cir. 1983) (suggesting a third-party homeowner may pursue a civil rights claim). This case concerns only a guest’s constitutional rights, and a guest in a home cannot “vicariously assert[ ]” the rights of the homeowner. Alderman, 394 U.S. at 174, 89 S.Ct. 961. Here, law enforcement’s entry and search resulted in charges against only the guest, not the homeowner.
DeLottinville argues that the Supreme Court’s decision in Olson, 495 U.S. at 100, 110 S.Ct. 1684, compels police to obtain both an arrest warrant and a search warrant in these circumstances. We disagree. In Olson, the defendant sought to suppress a statement he made following law enforcement’s warrantless entry into another’s home to arrest him. Id. at 94, 110 S.Ct. 1684. The Court held that, as an overnight guest, Olson had a legitimate expectation of privacy in the home. Id. at 98-99, 110 S.Ct. 1684. Because law enforcement entered the home without any warrant, the entry violated Olson’s Fourth Amendment rights, Id. at 93-94, 110 S.Ct. 1684.
Unlike in Olson, deLottinville was the subject of an arrest warrant. Olson merely confirms that deLottinville had an expectation of privacy; it says nothing about the *122 effect of a lawful arrest warrant. Therefore, we conclude that law enforcement’s entry into another’s home to arrest deLot-tinville did not violate her Fourth Amendment rights.
II.
DeLottinville contends that even if the Fourth Amendment does not require suppression, Article I, Section 10 of the Minnesota Constitution does. We disagree.
The text of Article I, Section 10 of the Minnesota Constitution mirrors the Fourth Amendment.[1] We are “free to interpret the Minnesota Constitution as affording greater protection against unreasonable searches and seizures than the United States Constitution.” State v. Askerooth, 681 N.W.2d 353, 361 (Minn. 2004). “[W]hen we reach a clear and strong conviction that there is a principled basis for greater protection of the individual civil and political rights of our citizens under the Minnesota Constitution, we will not hesitate to interpret the constitution to independently safeguard those rights.” Kahn v. Griffin, 701 N.W.2d 815, 828 (Minn. 2005).
When we interpret Article I, Section 10, we consider the Supreme Court’s Fourth Amendment jurisprudence to be “of persuasive, although not compelling, authority.” In re Welfare of B.R.K., 658 N.W.2d 565, 577 (Minn. 2003) (citing State v. Harris, 590 N.W.2d 90, 97 (Minn. 1999)). We have given independent meaning to Article I, Section 10 when we have had a principled reason to do so.[2]
On the subject of whether both an arrest warrant and a search warrant are required to enter a third party’s home to arrest a guest, we see no principled basis to apply the Minnesota Constitution to depart from overwhelming federal precedent and unanimous, although limited, state supreme court precedent. There is nothing in our constitution’s text or history, or in our state’s case law[3] or tradition, that requires *123 that both types of warrants be issued to arrest a guest present in another’s home. We decline to adopt a rule that provides greater protection for a guest than a homeowner in the execution of a lawful arrest warrant. DeLottinville is correct that, in B.R.K., invoking both constitutions, we suppressed the fruits of an entry and search involving a short-term social guest. 658 N.W.2d' at 580. But in that case, law enforcement had neither a search warrant nor an arrest warrant, and B.R.K was found hiding in the home. Id. at 569. In this case, the police had an arrest warrant and entered the home only after seeing the subject of the warrant.
Accordingly, we hold that neither the Fourth Amendment nor Article I, Section 10 requires police to obtain a search warrant before entering a home to arrest a guest who is the subject of a lawfully issued arrest warrant.
Affirmed.

. We have described the language of Article I, Section 10 and the Fourth Amendment as ‘‘textually identical” despite some differences in punctuation between the two provisions. State v. McMurray, 860 N.W.2d 686, 689 n.1 (Minn. 2015) (citation omitted).

. See, e.g., State v. Davis, 732 N.W.2d 173, 181-82 (Minn. 2007) (holding, in the absence of Supreme Court precedent, that a dog sniff in a hallway outside an apartment constitutes a search requiring a reasonable, articulable suspicion of criminal activity); State v. Carter, 697 N.W.2d 199, 212 (Minn. 2005) (holding that a dog sniff of an area outside a storage unit was an unreasonable search under Article I, Section 10, despite being reasonable under the Fourth Amendment, when officers lacked a reasonable, articulable suspicion of criminal activity); Askerooth, 681 N.W.2d at 362-63 (holding, contrary to Atwater v. City of Lago Vista, 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001), that a search or seizure during a traffic stop must be reasonable under Article I, Section 10 even when a minor law has been violated); B.R.K., 658 N.W.2d at 576-77 (holding, in the absence of Supreme Court precedent, that short-term social guests have a reasonable expectation of privacy under Article I, Section 10); Ascher v. Comm’r of Public Safety, 519 N.W.2d 183, 187 (Minn. 1994) (holding, contrary to Michigan Dep’t of State Police v. Sitz, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990), that roadblocks that indiscriminately stop all drivers in an effort to apprehend drunk drivers violate Article I, Section 10); In re Welfare of E.D.J., 502 N.W.2d 779, 782-83 (Minn. 1993) (holding, contrary to California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), that a person is seized under Article I, Section 10 when he reasonably concludes he is not free to leave).

.In two cases decided shortly after Steagald, we made conflicting statements—in dicta— about the issue presented in this case. Compare State v. Miller, 316 N.W.2d 23, 28 (Minn. 1982) (suggesting that an arrest warrant for an overnight guest is sufficient to enter a third party’s home), with State v. Patricelli, 324 N.W.2d 351, 354 n.2 (Minn. 1982) (suggesting *123 that a search warrant is necessary to enter a third party’s home to execute an arrest warrant for a visitor).