**Opinion filed January 12, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00034-CR

_____

## IGNACIO LOZA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**
**Taylor County, Texas**
**Trial Court Cause No. 28564A**

### O P I N I O N

The jury convicted Ignacio Loza of possession of methamphetamine in an amount of less than one gram, a state jail felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (West Supp. 2022). Upon finding the two enhancement allegations to be true, the jury assessed Appellant's punishment at confinement for a term of eight years in the Institutional Division of the Texas Department of

Criminal Justice and a fine of $1,000. Appellant challenges his conviction in four issues and requests an acquittal or, in the alternative, a remand for a new trial. We affirm.

*Background Facts*

On June 18, 2019, Sergeant John Ramirez of the Abilene Police Department received a confidential tip that Appellant was located at an apartment in Abilene. At the time, Appellant had an outstanding felony arrest warrant for failure to register as a sex offender. After confirming that Appellant had an outstanding felony arrest warrant, Sergeant Ramirez decided to conduct a "knock-and-talk" at the apartment. Sergeant Ramirez defined a knock-and-talk as "just a knock on the door [to] see who opens the door. The second step obviously depends on who is actually answering the door and what the agents see at that time."

Appellant testified that he had arrived at the apartment at around 8:00 or 9:00 a.m. that morning. Appellant planned on spending a few nights at the apartment because he was friends with the resident, Carol Price, and he usually spent a couple nights at her apartment when he visited her. Appellant had all of his belongings with him at Price's apartment because he was homeless at the time of his arrest.

Sergeant Ramirez assigned Agent Brady Broyles to conduct the knock-and-talk because Agent Broyles had been working in an undercover capacity and was dressed in plain clothes, meaning he was less likely to be immediately identifiable as a police officer. After arriving at the apartment, Sergeant Ramirez and other officers created a perimeter around the building to ensure that Appellant would be unable to escape while Agent Broyles approached the door.

After Agent Broyles knocked on the apartment door, Price answered it. What occurred after Price answered the door is disputed. Agent Broyles testified that he was immediately able to see most of Appellant's body sitting on a couch because

2

Price opened the door "a good three-quarters of the way" when she answered it. Agent Broyles testified that he identified himself as a police officer, asked Price if Appellant was in the apartment, and stepped to the left while remaining in the apartment's threshold. Agent Broyles said that he was then able to identify Appellant as the person with the outstanding arrest warrant because he could see Appellant's entire body and face after stepping to the left. Agent Broyles stated that, after identifying Appellant, he crossed the apartment's threshold and arrested Appellant for the outstanding arrest warrant.

In contrast, Appellant testified that Price walked to the door after hearing a knock and noticed that someone had covered the door's peephole. Appellant stated that Price only opened the door six inches—just enough to put her face in the doorway—because she did not want her dogs to run out of the apartment. Appellant asserted that he could not see who was at the door and that there was "no way possible" the person at the door could see Appellant. Appellant testified that when the person at the door asked if "Ignacio Loza" was at the apartment, Price began to close the door because she did not know Appellant by his real name. Appellant said that the person at the door then called Appellant by his street name, "Nacho," and again asked if he was at the apartment. Appellant stated that Price turned to look at Appellant as she was reaching down to pick up one of her dogs that was trying to escape. Appellant said that the door opened further as Price reached for the dog because Sergeant Ramirez was standing next to Agent Broyles and pressing his foot against the door to push it open.

Agent Broyles testified that he did not cross the threshold of the apartment until he was able to fully see and identify Appellant and denied needing to open the door further in order to get a better view of Appellant. Sergeant Ramirez testified that Agent Broyles was still in the doorway as Sergeant Ramirez approached and

3

that he and Agent Broyles entered the apartment at the same time. Both Agent Broyles and Sergeant Ramirez testified that Agent Broyles did not cover the peephole with his hand when he knocked on the door. Neither Agent Broyles nor Sergeant Ramirez remembered dogs being in the apartment.

After Sergeant Ramirez walked into the apartment, he assisted in Appellant's arrest and conducted a search incident to the arrest of Appellant. Sergeant Ramirez searched Appellant's left shirt pocket and found a clear plastic bag containing an "off-white crystal-like substance" that, through Sergeant Ramirez's training and experience, he believed was methamphetamine. The substance was field-tested and positively identified as methamphetamine. The substance was later lab-tested and identified as 0.38 grams of methamphetamine. Appellant was subsequently booked into the Taylor County Jail for the outstanding arrest warrant and for possession of methamphetamine.

*Analysis*

Appellant presents four issues on appeal. Appellant's first three issues center around his contention that officers illegally entered Price's apartment to arrest Appellant. Appellant contends that officers also needed a search warrant in addition to an arrest warrant in order to enter Price's apartment to arrest Appellant.

The trial court considered the legality of the officers' entry into Price's apartment during a hearing on the State's motion in limine. The State requested the trial court to instruct the parties to approach the bench before Appellant made "any reference to any purported or alleged illegality" regarding the warrant for Appellant's arrest or Appellant's seizure, arrest, and search incident to arrest. At the pretrial hearing on the State's motion in limine, Appellant's trial counsel informed the trial court that he intended to cross-examine testifying officers about the legality of the entry into the apartment. Trial counsel stated that it was

Appellant's contention that he was not in plain view when Price partially opened the door of her apartment and that the officers pushed the door of Price's apartment open further in order to see him.

Appellant's trial counsel also argued that Appellant had standing to assert that the entry was illegal. Trial counsel called Appellant to testify at the pretrial hearing on the issue of standing. Appellant testified about his history of staying with Price from time to time. In response, the State called Sergeant Ramirez to testify concerning the tip that the officers received about Appellant being inside Price's apartment and the officers' conduct when they knocked on Price's apartment. At the conclusion of the pretrial hearing, the trial court instructed Appellant's trial counsel to request a final ruling—on his request for an Article 38.23 instruction—after the State rested its case-in-chief. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2018).

After the State rested its case-in-chief, the trial court announced that Appellant's standing was not at issue because no search of Price's apartment occurred. The trial court explained that the warrant for Appellant's arrest granted arresting officers the authority to enter Price's apartment to arrest Appellant so long as they had a reasonable belief that Appellant was within the apartment. The trial court did, however, announce that it would include an Article 38.23 instruction in its charge to the jury, instructing the jury that it must find that the arresting officers had a reasonable belief that Appellant was within Price's apartment before considering any evidence obtained as a result of the officers' entry into the apartment.

*Jury Charge Error*

In his first issue, Appellant contends that the Article 38.23 instruction was incomplete because it should have instructed the jury that officers were required to obtain a search warrant in addition to an arrest warrant when executing an arrest

5

warrant in the home of a third party. Appellant asserts that a complete instruction would have allowed the jury to conclude that his arrest was illegal because the officers who arrested Appellant did not have a search warrant for Price's apartment. Appellant argues that, had the additional instruction been included, the jury would have disregarded the methamphetamine found on Appellant at the time of his arrest and returned a not-guilty verdict.

Under Article 36.14, the trial court is required to give the jury a written charge "setting forth the law applicable to the case." CRIM. PROC. art. 36.14 (West 2007); *Vega v. State*, 394 S.W.3d 514, 518 (Tex. Crim. App. 2013). We note at the outset that Appellant did not object to the Article 38.23 instruction that was included in the jury charge. "[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).

When reviewing a jury charge, we first determine whether error occurred; if no error occurred, our analysis ends. *Id.* If error did occur, whether it was preserved then determines the degree of harm required for reversal. *Id.*; *see Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). When a defendant does not raise a timely objection to the jury instructions, he will obtain a reversal only if the error is so egregious and created such harm that he "has not had a fair and impartial trial." *Barrios*, 283 S.W.3d at 350 (quoting *Almanza*, 686 S.W.2d at 171). As set forth below, the Article 38.23 instruction in the trial court's jury charge was not erroneous under the facts of this case.

Appellant cites *Steagald v. United States*, 451 U.S. 204 (1981), and *Hudson v. State*, 662 S.W.2d 957 (Tex. Crim. App. 1984), for the proposition that a search warrant is required in addition to an arrest warrant when an arrest warrant is executed

in the home of a third party. In *Steagald*, the U.S. Supreme Court held that law enforcement officers must obtain a search warrant, absent exigent circumstances or consent, in order to legally search for the subject of an arrest warrant in the home of a third party. 451 U.S. 204. In *Hudson*, the Texas Court of Criminal Appeals applied *Steagald* to hold that "officers must be armed with a search warrant if they are seeking to arrest a suspect in the home of a third person, absent consent or exigent circumstances." 662 S.W.2d at 960 (citing *Brown v. Texas*, 442 U.S. 47 (1979)).

The facts in *Steagald* and *Hudson* are distinguishable from the circumstances of Appellant's arrest. Importantly, the defendants claiming a Fourth Amendment violation in *Steagald* and *Hudson* were not the subjects of an arrest warrant. Instead, the guest they were hosting had an outstanding arrest warrant. *Steagald*, 451 U.S. at 206–07; *Hudson*, 662 S.W.2d at 958. In both cases, law enforcement officers executed the guest's arrest warrant while the guest was in the third party's residence without obtaining a search warrant for the third party's home. *Steagald*, 451 U.S. at 206–07; *Hudson*, 662 S.W.2d at 958. After entry, law enforcement officers discovered illegal substances in the homes and arrested the homeowners. *Steagald*, 451 U.S. at 206–07; *Hudson*, 662 S.W.2d at 958.

The analysis in *Steagald* and *Hudson* was limited to whether an arrest warrant for a guest adequately protected the Fourth Amendment interests of a homeowner when law enforcement entered the home without a search warrant, without consent, and in the absence of exigent circumstances. *Steagald*, 451 U.S. at 219; *Hudson*, 662 S.W.2d at 958. Both courts held that a contemporaneous search warrant for the home was required in order to protect the *homeowner* from the warrantless *search of his home* that occurred when officers executed an arrest warrant for the homeowner's guest. *Steagald*, 451 U.S. at 213, 216; *Hudson*, 662 S.W.2d at 958–60. As a result, both courts held that the lack of a search warrant violated the

7

homeowner's Fourth Amendment right against warrantless searches of his home. *Steagald*, 451 U.S. at 222–23; *Hudson*, 662 S.W.2d at 959–60.

*Steagald* and *Hudson* are based on the Fourth Amendment's guarantee that protects homeowners against warrantless searches of their property. *Steagald*, 451 U.S. at 222–23; *Hudson*, 662 S.W.2d at 959–60; *see* U.S. CONST. amend. IV. But the question before us is not whether Price, the homeowner in this case, suffered a Fourth Amendment violation when officers entered her apartment to execute Appellant's arrest. Rather, we must decide whether Appellant's Fourth Amendment privacy interests were violated when officers executed his arrest warrant in Price's apartment without first obtaining a search warrant for Price's apartment. We hold that they were not.

In *United States v. Jackson*, the Seventh Circuit recognized the inapplicability of *Steagald* when the defendant is the subject of an arrest warrant. 576 F.3d 465, 467–68 (7th Cir. 2009). The court cited *Steagald* for the proposition that "if officers enter a third party's residence in order to effect an arrest, the third party herself may have a Fourth Amendment claim against the officers." *Id.* at 468 (citing *Steagald*, 451 U.S. at 212). However, *Steagald* was "quite explicit that 'the narrow issue before [the Court was] whether an arrest warrant—as opposed to a search warrant— is adequate to protect the Fourth Amendment interests of persons *not named in the warrant*.'" *Id.* (alteration in original) (quoting *Steagald*, 451 U.S. at 212) (emphasis in *Jackson*, not in *Steagald*); *see Talley v. State*, No. 09-08-00533-CR, 2010 WL 546740, at *2 (Tex. App.—Beaumont Feb. 17, 2010, no pet.) (mem. op., not designated for publication) (holding that a person named in an arrest warrant cannot rely on *Steagald* when arrested in a third party's home).

The court in *Jackson* rejected the defendant's argument that the police needed a search warrant as well as an arrest warrant in order to arrest him in another

person's home. 576 F.3d at 467. The court reasoned that *Steagald* did not hold that the subject of an arrest warrant has a higher expectation of privacy in another person's residence than he does in his own residence. *Id.* at 468 (citing *United States v. Underwood*, 717 F.2d 482, 483–84 (9th Cir. 1983) (en banc)). The court further noted that "nearly every court of appeals to consider the issue has held that law enforcement officers do not need a search warrant in addition to an arrest warrant to enter a third party's residence in order to effect an arrest." *Id.* (citing *United States v. Agnew*, 407 F.3d 193, 197 (3d Cir. 2005); *United States v. Kaylor*, 877 F.2d 658, 663 (8th Cir. 1989); *United States v. Underwood*, 717 F.2d 482, 483–84 (9th Cir. 1983); *United States v. Buckner*, 717 F.2d 297, 299–300 (6th Cir. 1983)).

The court in *Jackson* also recognized that the holding in *Payton v. New York*, 445 U.S. 573 (1980), is applicable with respect to the degree of suspicion needed by the police to enter a third party's residence to execute a search warrant. *Id.* at 468–69. In *Payton*, the U.S. Supreme Court held that "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." 445 U.S. at 603. *Payton* established two prerequisites to the lawful execution of a felony arrest warrant in a suspect's home: (1) officers must have a reasonable belief that the suspect resides at the place to be entered; and (2) officers must have a reasonable belief that the suspect is present at the time the warrant is executed. *See Morgan v. State*, 963 S.W.2d 201, 204 (Tex. App.—Houston [14th Dist.] 1998, no pet.). Thus, the Seventh Circuit in *Jackson* determined that the analysis in *Payton* extends to situations where the police enter a third party's residence to execute an arrest warrant upon a guest—the police must have reason to believe that the guest is within the residence. *Jackson*, 576 F.3d at 468–69.

Appellant contends that the first prerequisite established in *Payton* was not met because officers could not have reasonably believed that Appellant was a resident of Price's apartment. Irrespective of the police's belief as to whether Appellant was a resident of Price's apartment, the critical inquiry is whether the police reasonably believed that Appellant was there at the time the arrest warrant was executed. *See id.* ("Although officers do not need a search warrant to execute an arrest warrant in a third party's home, they do need *some* basis for believing that the suspect is actually present in the home.").

The court in *Jackson* rejected the appellant's implicit contention that a person named in an arrest warrant has a higher expectation of privacy in the home of a third party than he does in his own home. *See id.* at 467–68. As noted by the Minnesota Supreme Court in *State v. deLottinville*:

> We conclude that *Payton* sets the ceiling on a guest's Fourth Amendment rights. A guest should not receive any greater Fourth Amendment protection when outside her home than when inside it. The home is "first among equals" under the Fourth Amendment, representing the "very core" of a person's constitutional protections. *Florida v. Jardines*, —— U.S. ——, 133 S.Ct. 1409, 1414, 185 L.Ed.2d 495 (2013) (quoting *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961) (internal quotation marks omitted)). Yet *Payton* held that it is constitutionally reasonable for police to enter a person's own home when police have an arrest warrant for that person. *Payton*, 445 U.S. at 602, 100 S.Ct. 1371. Because Fourth Amendment rights are at their apex in one's own home, it necessarily follows that the subject of an arrest warrant enjoys no greater protection as a guest in another's home.

> In other words, it is a person's status as the subject of the arrest warrant, not whether the person is in her own home or the home of another, that is decisive under *Payton*'s logic. Here, police lawfully obtained an arrest warrant for [Appellant] and entered the home knowing that she was there, so their entry did not violate her Fourth Amendment rights.

890 N.W.2d 116, 120 (Minn. 2017). We conclude that the holdings in *Jackson* and *deLottinville* correctly set out the law in this matter—as far as Appellant's criminal prosecution was concerned, the police did not need a search warrant in addition to an arrest warrant in order to arrest Appellant in Price's apartment. Accordingly, the trial court did not err by failing to include a requirement for a search warrant in its Article 38.23 instruction. *See Jackson*, 576 F.3d at 467–68.

Appellant does not address the second prerequisite established in *Payton* concerning whether the arresting officers had a reasonable belief that Appellant was within Price's apartment. However, the question of whether officers had a reasonable belief that Appellant was in Price's home at the time of his arrest was presented to the jury in the Article 38.23 instruction. Thus, the Article 38.23 instruction correctly stated the law applicable to the case. *See id.* at 467–69. We overrule Appellant's first issue.

*Ineffective Assistance of Counsel – Failing to Object to Article 38.23 Instruction*

In his third issue, Appellant contends that his trial counsel was ineffective by failing to object to the Article 38.23 jury instruction regarding illegally obtained evidence. Specifically, Appellant argues that his trial counsel's failure to object based on the matter we addressed in Appellant's first issue prevented Appellant from preserving error and heightened Appellant's burden of proof on appeal because Appellant is now required to demonstrate that he suffered "egregious harm" rather than "some harm." *See Almanza*, 686 S.W.2d at 171.

To establish that trial counsel rendered ineffective assistance at trial, Appellant must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result would have been different but for counsel's errors. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.

Crim. App. 1999) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the defendant must overcome the presumption that the challenged action could be considered sound trial strategy. *Id.* at 689.

A claim of ineffective assistance of counsel "must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). Direct appeal is usually an inadequate vehicle to raise such a claim because the record is generally undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Direct appeal is especially inadequate when counsel's strategy does not appear in the record. *Id.* Trial counsel should ordinarily have an opportunity to explain his actions before an appellate court denounces counsel's actions as ineffective. *Id.* Without this opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim App. 2001)).

"In order to succeed with an ineffective-assistance-of-counsel claim based on counsel's failure to object, one 'must show that the trial judge would have committed error in overruling such objection.'" *Ex Parte Parra*, 420 S.W.3d 821, 824–25 (Tex. Crim. App. 2013) (quoting *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011)). We have already concluded that the Article 38.23 instruction given at trial contained no error. Therefore, even if Appellant's trial counsel had objected to the jury charge on the basis that Appellant asserts in his first issue, the trial court

could have properly overruled the objection. Accordingly, we overrule Appellant's third issue.

*Ineffective Assistance of Counsel – Failing to File Motion to Suppress*

In his second issue, Appellant asserts that his trial counsel was ineffective in failing to file a motion to suppress the methamphetamine seized from Appellant's person after he was arrested. Appellant reasserts that his arrest was illegal in the absence of a search warrant for the reason set out in his first issue. He contends that, had his trial counsel filed a motion to suppress the methamphetamine, "it is likely that the drugs would have been suppressed and the case dismissed—a wholly different outcome for Appellant." Appellant's contention is incorrect.

Trial counsel's failure to file a motion to suppress is not per se ineffective assistance of counsel. *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986); *Ex parte Jones*, 473 S.W.3d 850, 854 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). Counsel is not required to engage in the filing of futile motions. *Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991); *Ex parte Jones*, 473 S.W.3d at 854. To satisfy the *Strickland* test and prevail on an ineffective assistance claim premised on counsel's failure to file a motion to suppress, an appellant must show that a motion to suppress would have been granted. *Jackson v. State*, 973 S.W.2d 954, 956–57 (Tex. Crim. App. 1998).

Appellant erroneously claims that the methamphetamine found during the search incident to his arrest should have been suppressed because his arrest was illegal in the absence of a search warrant. Appellant again relies on his misapplication of *Steagald* and *Hudson* as discussed in his first issue, claiming that "Appellant's arrest was a situation where a search warrant was needed." Just as we held in our discussion of Appellant's first issue, the police did not need a search warrant, in addition to the arrest warrant, in order to arrest Appellant in

13

Price's apartment. *See Jackson*, 576 F.3d at 467–68. Accordingly, trial counsel was not ineffective for failing to file a motion to suppress on the basis asserted by Appellant on appeal—that his arrest was unlawful in the absence of a search warrant. *See id.* Thus, we overrule Appellant's second issue.

*Impeachment Evidence*

In his fourth issue, Appellant asserts that the trial court abused its discretion when it allowed the State to impeach Appellant with his prior conviction for delivery of methamphetamine during his cross-examination in the guilt/innocence phase of trial. Appellant asserts that he did not put his character for truthfulness at issue and that the prejudicial effect of admitting his prior conviction outweighed its probative value.

Appellant testified at the guilt/innocence phase in support of his claim that the police forced their way into Price's apartment in order to arrest him. On cross-examination, Appellant replied in the affirmative that he "intentionally and knowingly possessed" methamphetamine. He further testified that he had used methamphetamine on the previous night. The prosecutor then informed the trial court that he sought to cross-examine Appellant regarding his prior conviction for delivery of methamphetamine. Appellant's trial counsel objected on the basis that Appellant's prior conviction was irrelevant to the facts of the current charge and that Appellant's character had not come into question. The trial court overruled Appellant's objection.

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001). We will uphold a trial court's evidentiary ruling on appeal if it is correct on any

14

theory of law that finds support in the record. *Gonzalez v. State*, 195 S.W.3d 114, 125–26 (Tex. Crim. App. 2006); *Dering v. State*, 465 S.W.3d 668, 670 (Tex. App.—Eastland 2015, no pet.)

Evidence of criminal convictions may be used to attack the credibility of a witness under Rule 609 of the Texas Rules of Evidence. Rule 609(a) provides that evidence of a criminal conviction must be admitted if the crime is a felony or involved moral turpitude and the trial court determines that the probative value of admitting the evidence outweighs its prejudicial effect, provided no more than ten years have elapsed since the witness's conviction or release from confinement. TEX. R. EVID. 609(a), (b). Here, Appellant's release from confinement had occurred within the preceding ten years.

When considering the probative effect of evidence versus its possible prejudicial effect, we presume that the trial court conducted the balancing test, which need not be shown in the record. *See Bryant v. State*, 997 S.W.2d 673, 676 (Tex. App.—Texarkana 1999, no pet.). In *Theus v. State*, the Court of Criminal Appeals set out a nonexclusive list of factors courts should use when applying Rule 609(a) to weigh the probative value of admitting a testifying witness's prior conviction against its prejudicial effect. 845 S.W.2d 874, 880 (Tex. Crim. App. 1992). The *Theus* factors are: (1) the impeachment value of the prior crime; (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent criminal history; (3) the similarity between the past crime and the offense being prosecuted; (4) the importance of the witness's testimony; and (5) the importance of the witness's credibility. *Id.* at 881. In reviewing the trial court's ruling on the admissibility of a prior conviction, "we must accord the trial court 'wide discretion.'" *Id.* (quoting *United States v. Oaxaca*, 569 F.2d 518, 526 (9th Cir. 1978)).

A defendant who testifies puts his or her veracity at issue and "may be cross-examined and impeached in the same manner as any other witness." *Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010) (quoting *Feldman v. State*, 71 S.W.3d 738, 755 (Tex. Crim. App. 2002)). Accordingly, we disagree with Appellant's contention that his testimony did not place his veracity in question. We compare the probative value of Appellant's 2010 conviction for delivery of methamphetamine with its prejudicial effect using the *Theus* factors. *Theus*, 845 S.W.2d at 881; *see Schmidt v. State*, 373 S.W.3d 856, 862–63 (Tex. App.—Amarillo 2012, pet. ref'd) (using the five *Theus* factors to weigh the probative value of using defendant's prior convictions as impeachment evidence).

The impeachment value of crimes involving deception is higher than for crimes not involving deception. *See Hankins v. State*, 180 S.W.3d 177, 181 (Tex. App.—Austin 2005, pet. ref'd). Determining whether or not a drug crime constituted a crime of deception typically depends on the facts and circumstances of the offense. *Id.* at 181 n.2. Because no specific facts and circumstances of Appellant's previous conviction are available in the record, we assume that the prior drug offense was not a crime of deception. *Id.* Thus, the first *Theus* factor weighs against admission of the prior conviction. *See Theus*, 845 S.W.2d at 881 ("when a party seeks to impeach a witness with evidence of a crime that relates more to deception than not, the first factor weighs in favor of admission").

The second factor will weigh in favor of admission if the past crime is recent and the witness has "demonstrated a propensity for running afoul of the law." *Id.* The State informed the trial court that Appellant had been incarcerated in the Institutional Division of the Texas Department of Criminal Justice within ten years before trial commenced for the offense of delivery of methamphetamine. Additionally, before evidence of the prior conviction was admitted, the jury had

heard of three instances of Appellant running afoul of the law. Appellant had already testified that he intentionally and knowingly possessed methamphetamine on the date of his arrest, that he had last used methamphetamine on the night before his arrest, and that he knew he had an outstanding felony arrest warrant. Because Appellant had been imprisoned for the prior drug conviction within the past ten years and had demonstrated a propensity for running afoul of the law, the second *Theus* factor weighs in favor of admission. *See* TEX. R. EVID. 609(a); *Theus*, 845 S.W.2d at 881.

The third factor will weigh against admission if the prior conviction and charged crime are similar. *Theus*, 845 S.W.2d at 881. Here, the third factor weighs against admission because both offenses involve methamphetamine and "the admission for impeachment purposes of a crime similar to the crime charged presents a situation where the jury would convict on the perception of a past pattern of conduct, instead of on the facts of the charged offense." *Id.*

The fourth and fifth factors "both depend on the nature of a defendant's defense and the means available to him of proving that defense." *Id.* "When the case involves the testimony of only the defendant and the State's witnesses, . . . the importance of the defendant's credibility and testimony escalates." *Id.* As the importance of the defendant's credibility rises, so does the State's need for an opportunity to impeach the defendant. *Id.* Here, Appellant was the only witness who testified in his defense. Furthermore, Appellant's recounting of the events leading up to his arrest were far different than that of Agent Broyles and Sergeant Ramirez. Consequently, Appellant's credibility was of high importance, and the State's need for an opportunity to impeach Appellant's credibility rose in turn. *See id.* Therefore, the fourth and fifth factors weigh in favor of admission.

In conclusion, the majority of the *Theus* factors weigh in favor of admitting the challenged evidence. Based on our consideration of all five *Theus* factors and the wide discretion we afford the trial court, we hold that the probative value of Appellant's prior conviction outweighed its prejudicial effect and that the trial court did not abuse its discretion in allowing the State to impeach Appellant with his prior conviction for delivery of methamphetamine. *See Theus*, 845 S.W.2d at 881; *Davis v. State*, 259 S.W.3d 778, 784 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

Moreover, even if the trial court erred in admitting evidence of Appellant's prior conviction for delivery of methamphetamine at the guilt/innocence stage, the evidence was not harmful. As noted previously, Appellant admitted at trial to being in possession of methamphetamine at the time of his arrest and to using methamphetamine on the previous night. Accordingly, Appellant's fourth issue is overruled.

### This Court's Ruling

We affirm the judgment of the trial court.

JOHN M. BAILEY
CHIEF JUSTICE

January 12, 2023

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.